Argued November 2, affirmed December 29, 1967, petition for
rehearing denied February 13, 1968

POZSGAI, *Appellant, v.* PORTER, *Respondent.*

435 P. 2d 818

*Maurice D. Sussman,* Portland, argued the cause for appellant. With him on the briefs was Leo Levenson, Portland.

*Earl Fewless,* Portland, argued the cause for respondent. With him on the brief were Gerald H. Robinson, and Mize, Kriesien, Fewless & Cheney, Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and WOODRICH, Justices.

HOLMAN, J.

Plaintiff, a passenger in a motor vehicle, brought an action for damages for injuries occasioned by a collision between that vehicle and one operated by defendant. From a judgment entered on a jury verdict for defendant, plaintiff appealed.

Defendant was operating his vehicle in an easterly direction on Jennings Avenue in Clackamas County and stopped at its intersection with Oatfield Road. After stopping, defendant drove into the intersection at the speed of about five miles per hour and turned to the left in a northerly direction on Oatfield Road. While so doing, he claimed that his steering gear jammed in the turned position. He continued in a left curve out of the intersection, came back across Oatfield Road and collided with the left side of the

vehicle in which plaintiff was riding as it was being operated in a southerly direction on the west side of Oatfield Road. Though defendant contends otherwise, it is our interpretation of the facts that they conclusively show that the vehicle in which plaintiff was riding was on its own side of the road when it was struck by defendant's vehicle. From the point in his curve where he discovered he could not straighten the wheels of his vehicle to the point of the collision was about 45 feet. Defendant sought to account for his jammed steering gear by claiming he subsequently found a rock lodged in his steering mechanism which caused it to malfunction.

The principal assignments of error relate to the failure of the trial court in various ways to apply the doctrine of *McConnell v. Herron,* 240 Or 486, 402 P2d 726 (1965) to the circumstances of this case. Prior to *McConnell* the court rendered a series of opinions holding that one who failed to comply with statutory requirements relating to safety equipment was conclusively negligent. Failure to have adequate brakes, *Nettleton v. James et al,* 212 Or 375, 319 P2d 879 (1958); *Daniels v. Riverview Dairy,* 132 Or 549, 287 P 77 (1930); failure to have prescribed lights, *Hickerson v. Jossey,* 131 Or 612, 282 P 768 (1930). In *McConnell* we relaxed this rule slightly and held that such a violation could be excused if it was impossible to comply with the statute by the exercise of the highest degree of care. Because defendant violated ORS 483.302 requiring him to operate his vehicle on the right side of the road, plaintiff argues that the rule of *McConnell* applies and that defendant can be excused for his violation of the statute only if it was beyond his power to comply by the exercise of the highest degree of care.

■ At the same time the court was deciding the pre-*McConnell* cases relating to safety equipment, it was deciding another series of cases concerning the violation of statutes relating to the manner in which vehicles are operated. These cases hold that an individual violating such a statute can excuse his conduct by showing that he could not or should not have complied by the exercise of reasonable care. Driving on the wrong side of the road, *Raz v. Mills,* 231 Or 220, 372 P2d 955 (1962); *Gum, Adm. v. Wooge et al,* 211 Or 149, 315 P2d 119 (1957); *La Vigne v. Portland Traction Co.,* 179 Or 221, 170 P2d 709 (1946); illegal turning at intersection, *Marshall v. Olson,* 102 Or 502, 202 P 736 (1922). In *McConnell* we specifically expressed approval of those opinions holding that the violation of an operational statute could be excused by showing that it could not have been complied with by the exercise of reasonable care.

■ The present case is identical to *Raz v. Mills, supra.* In both the present case and in *Raz* the defendant was on the wrong side of the highway and sought to excuse himself because of an emergency situation. In *Raz,* it was loss of control resulting from an attempt to avoid hitting a pedestrian who ran across the road, and in the present case it was loss of control resulting from a jammed steering mechanism. We believe *McConnell* should be limited in application to the violation of statutes relating to safety equipment. It was not our intention to make it more difficult to excuse the violation of an operational statute but, rather, to make it possible to excuse the violation of a statute requiring safety equipment.

The contention is made that theoretically there is no justification for the rule of *McConnell* which treats the violation of safety equipment statutes differently

than the violation of operational statutes. Be that as it may, the violation here was that of an operational statute and we specifically approve the *Raz* rule in violations of that sort.

■ In the event of *McConnell's* inapplicability, plaintiff claims that, nevertheless, defendant was negligent as a matter of law in not stopping his vehicle prior to its collision with the one in which she was riding and that no emergency situation which was the cause of the accident was created by the defective steering apparatus. She argues that defendant was travelling at only five miles per hour and covered a distance of 45 feet after he knew of his difficulty with the steering mechanism and therefore, as a matter of law, he had ample time within which to stop his vehicle after learning of his steering difficulties. Despite defendant's testimony that he could have stopped his vehicle while going five miles per hour, this court is not prepared to say that defendant was negligent as a matter of law in not so stopping if, in fact, he was faced with such an unexpected situation as a jammed steering mechanism. It was a jury question whether under these circumstances, in the exercise of reasonable care, he should have stopped his vehicle before it entered the opposite side of the highway.

■ Plaintiff also contends that the court erred in giving the following instruction:

"* * * Thus if you find that at the time and place of the accident, the defendant was not in control of his car solely by reason of a faulty steering apparatus, he would not be deemed guilty of negligence unless you find that in the exercise of reasonable care he knew or should have known that the steering apparatus was faulty.

"In this connection you will use the standard of the reasonably prudent person which I have already

instructed you upon. In other words, if you find that at the time and place of the accident, the defendant acted as a reasonably prudent person would act under the same or similar circumstances and without any negligence on his part lost control of his automobile by reason of a faulty steering mechanism, then he would not be deemed guilty of negligence."

Plaintiff argues that "It permitted the jury to find the defendant free from negligence, and therefore bring in a verdict for defendant, from the jury's determination of this single fact that the defendant did not know the steering apparatus was faulty." Plaintiff's assignment of error is not well taken. The scope of the instruction is limited to where the loss of control was *solely* by reason of the faulty steering gear. Where the faulty steering apparatus was the sole reason defendant lost control and was on the wrong side of the road, and he was not negligent in relation to the faulty apparatus, the instruction correctly stated the law.

The judgment of the trial court is affirmed.

O'CONNELL, J., specially concurring.

We have now developed out of the negligence per se doctrine in this state the strange conclusion that the violation of a safety equipment statute is negligence per se of one type and the violation of an "operational" statute is negligence per se of another type. It would be interesting to know the basis for the distinction. Certainly it is not stated in the majority opinion or in any of our previous cases from which the present rule was spawned.

In my dissent in *McConnell v. Herron*, 240 Or 486, 494, 402 P2d 726, 730 (1965), I expressed the view

that the doctrine which treats the violation of a statute as negligence per se is indefensible and should be abolished. The court having chosen to retain the doctrine, I do not propose to re-argue the matter. But something further should be said in criticism of the distinction which the court now makes between safety equipment statutes and operational statutes in applying the negligence per se doctrine.

The distinction seems to be that if the defendant violates a safety equipment statute he can be excused from the violation only "if it was beyond his power to comply by the exercise of the highest degree of care", whereas if the defendant violates an operational statute he can be excused from the violation "by showing that he could not or should not have complied by the exercise of reasonable care." I take this to mean that a defendant who violates a safety equipment statute has a heavier burden in explaining why he should be excused from the violation than a defendant who violates an operational statute.

Why should the burden in the two cases be different? The only justification for treating the violation of a statute as negligence per se is on the ground that the statute sets a legislative standard the violation of which is to be deemed negligence as a matter of law. Consistency would require us to also look to the legislative intent for the purpose of determining the circumstances under which the defendant would be excused from the violation of the statute. The court does not suggest any reason why the legislature would have intended to impose a higher standard in establishing an excuse for the violation of an equipment statute than for the violation of an operational statute. I, myself, am unable to think of any ground for the distinction.

We might also ask ourselves in passing why a plaintiff who rests his case on the violation of a statute should have the advantage that comes from shifting the burden upon the defendant to show why he should be excused from the violation of the statute, an advantage not enjoyed by a plaintiff who alleges the violation of a court-made standard.

It is also appropriate to again put the question raised in the dissent in *McConnell*. What is meant by the court's statement that the defendant must prove that "his noncompliance was caused by circumstances beyond his control and that it was impossible, regardless of his degree of care, for him to comply with the statute." *McConnell v. Herron,* supra 240 Or at 491. I still think that the trial bench and the bar will not know what standard this purports to establish.

Confusion lurks in another aspect of the present case. It is the same confusion identified by Mr. Justice DENECKE in his dissent in the *McConnell* case. When plaintiff bases his case on the violation of an operational statute, does the burden of proof shift to the defendant to show that the violation was "beyond his control" and that it was "impossible" for him to comply with the statute, or does the defendant escape this burden simply by showing that he acted as a reasonable man and therefore the statute is inapplicable? And if defendant may do the latter, is there any meaning to the doctrine in its application to operational statutes?

All of this confusion would vanish if we abolished the formula making the violation of a statute negligence per se.

DENECKE, J., concurs in this opinion.