Argued March 3, affirmed April 4, 1972

HYSTER COMPANY, *Respondent, v.* WILLIS-
SHAW FROZEN EXPRESS, INC., *Defendant,*
LILAC CITY EXPRESS, INC., *Appellant.*

495 P2d 710

*David C. Landis,* Portland, argued the cause for appellant. With him on the briefs were Gearin, Hollister & Landis, Portland.

*Stephen R. Frank,* Portland, argued the cause for respondent. With him on the brief were Tooze, Powers, Kerr, Tooze & Peterson, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, and BRYSON, Justices.

HOLMAN, J.

This is an action for property damage arising out of an accident involving three trucks.

A truck owned by defendant Willis-Shaw Frozen Express, Inc. (Willis-Shaw), was being driven in an easterly direction on Highway 30 when it failed to negotiate a curve and ran into a bank on its left, or the northerly side of the highway. After the truck came to rest, it blocked the entire westbound lane of traffic. It was dark; the road was icy and slick. A short time later, plaintiff's truck came upon the scene, traveling in a westerly direction in the lane of traffic blocked by the Willis-Shaw truck. Plaintiff's driver observed the wrecked truck, stopped his vehicle 200 feet before he got to the wreck, and put out

flares warning of the presence of his parked truck on the northerly side of the highway.

Thereafter, a third truck, owned by defendant Lilac City Express, Inc. (Lilac), approached traveling in an easterly direction in its proper lane of traffic. The driver put on his brakes and decreased his speed, but, being unable to stop, continued on by the Willis-Shaw truck. As he passed it, he ran over a fuel tank strap which had been dislodged from the Willis-Shaw truck in its collision with the bank and which lay on the pavement about two feet into the eastbound lane. The strap punctured the left, front tire of the Lilac truck, which was thereupon thrown out of control. The truck careened down the highway, veering to the left as it proceeded, and ran into plaintiff's vehicle parked at the northerly side of the highway, thus inflicting the damages for which this action was brought. There was evidence that there were no flares or lights on the Willis-Shaw truck which were visible to Lilac's driver.

The case was tried to a jury and resulted in a verdict and judgment in favor of plaintiff and against both defendants. Willis-Shaw admitted liability to plaintiff before the case was submitted to the jury. Lilac appealed.

 The first two assignments of error asserted by Lilac relate to instructions concerning Willis-Shaw's duties to comply with the statutes requiring lights upon its vehicle[1] and the placement of flares warning of its disabled truck.[2] The trial court erroneously instructed that Willis-Shaw could be excused from complying with the statutes if it could not have complied

[1] ORS 483.402 and 483.410.
[2] ORS 483.456.

with them by the exercise of *reasonable* care. In fact, because the statutes relate to safety equipment, Willis-Shaw could be excused from complying with them only if it could not have done so by the exercise of the *highest degree* of care. *Ainsworth v. Deutschman,* 251 Or 596, 446 P2d 187 (1968) ; *McConnell v. Herron,* 240 Or 486, 402 P2d 726 (1965).

The trial judge's reason for giving the instructions concerning the duties of Willis-Shaw, despite Willis-Shaw's admission of liability to plaintiff, was that he felt the jury should know, in deciding whether Lilac's actions were reasonable under the circumstances, what Lilac had a right to expect of Willis-Shaw. Lilac was charged by plaintiff with excessive speed, failure to exercise reasonable lookout and control, and failure to drive on the right half of the highway. It is contended by Lilac that it was prejudiced by the instruction because the degree of vigilance which the law imposes upon Lilac is related to the degree of care to be expected from Willis-Shaw to light its wrecked vehicle.

It can be argued that Lilac had the right to act on the assumption that others would obey the law, and that the more stringent the duty placed upon Willis-Shaw to use lights and flares to warn of its vehicle, the more Lilac could rely on a wreck being lighted. However, as long as the jury was told that Willis-Shaw *had* a duty of care to light its wrecked vehicle, we do not believe the determination of Lilac's negligence was seriously prejudiced because the degree of care which the law required of Willis-Shaw was misstated. It is our view that, under the trial court's instructions, Lilac's actions would be considered by the jury from the viewpoint of one who came upon a

wreck which he had a right to expect would be lighted. Whether the owner of the wrecked vehicle could be excused from lighting it by the exercise of reasonable care or whether he had to use the highest degree of care before he could be so excused would have been a relatively insignificant factor in the jury's assessment of the reasonableness of Lilac's actions. The chance that such an error changed the outcome of the case is infinitesimal. If errors of such small relevance are used as a basis to upset trial judgments, few judgments would stand the test.

■ The remaining two assignments of error raise the question of whether there was sufficient evidence of Lilac's negligence to go to the jury. Evidence was introduced from which the jury could find that the highway at the scene of the accident was covered with a sheet of ice to the extent that it was difficult for a person to stand upon it, and that this condition had existed for several miles in the direction from which Lilac's truck had come; that Lilac's truck approached the scene of the accident at approximately 45 miles an hour and skidded 200 feet before it hit plaintiff's truck; and that the fuel tank strap was not seen by Lilac's driver until he was nearly upon it and that there was ample room for Lilac's truck to go by without running over it. Under such circumstances, Lilac's negligence was a question for the jury.

The judgment of the trial court is affirmed.